STATE OF NORTH CAROLINA v. KENNETH FREEMAN

No. 173A81

(Filed 11 January 1983)

**1. Criminal Law §§ 75.1, 84— seizure of defendant without probable cause—confession as fruit of the poisonous tree**

When a defendant has been seized without probable cause for his arrest and thereafter makes an incriminating statement, his statement must be suppressed as "the fruit of the poisonous tree" unless the effect of the unlawful seizure has been sufficiently attenuated by some intervening event occurring between the unlawful seizure and the incriminating statement.

**2. Criminal Law §§ 75.1, 84— seizure of person within meaning of the Fourth Amendment**

Neither the subjective beliefs of law enforcement officers nor those of a defendant with regard to whether the defendant is free to leave at will are dispositive of the question of whether he has been seized within the meaning of the Fourth Amendment. Rather, a person has been seized for purposes of Fourth Amendment analysis "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

**3. Criminal Law §§ 75.1, 84— seizure of defendant without probable cause—subsequent confession not admissible at trial**

Defendant was seized without probable cause within the meaning of the Fourth Amendment prior to making his confession that he committed arson where the uncontroverted evidence showed that, during a deputy sheriff's initial request that defendant accompany him to the county law enforcement center, the deputy told defendant that he was at defendant's home to "pick him up" at the request of another officer and that the reason defendant was being "picked up" was that defendant's sister had told officers that defendant had made a statement indicating that he would burn her house down, since the deputy's statements could have led defendant reasonably to believe that his compliance with the deputy's request might be compelled and that he was not free to leave. Furthermore, the State failed to show that the effect of the unlawful seizure had been sufficiently attenuated at the time defendant confessed to render the confession admissible at defendant's trial for arson where the evidence showed that the 17-year-old defendant was kept at the law enforcement center in an 8-foot by 8-foot office; for three and one-half hours, either one or two officers questioned the defendant in that room; and although defendant continued to deny any involvement in the crime under investigation,

the questioning continued without the defendant being given any indication that he was free to leave or that he could contact his mother or. other members of his family as he had been permitted to do during prior questioning.

**4. Criminal Law §§ 75.1, 84— voluntary confession—unconstitutional seizure of defendant not attenuated**

The conclusion that the defendant's confession was voluntary for Fifth Amendment purposes is not sufficient by itself to attenuate the taint of a confession given after a defendant has been unconstitutionally seized.

Justice MEYER dissenting.

Justices COPELAND and MARTIN join in this dissenting opinion.

BEFORE *Farmer, Judge,* at the 5 October 1981 Criminal Session of Superior Court, CUMBERLAND County. The defendant was tried upon an indictment proper in form for the crime of arson in the first degree and entered a plea of not guilty. He was found guilty by a jury and received the mandatory sentence of imprisonment for life pursuant to G.S. 14-58.[1] The defendant appeals the conviction and life sentence to this Court as a matter of right.

*Rufus L. Edmisten, Attorney General, by Jo Anne Sanford, Special Deputy Attorney General, for the State.*

*Adam Stein, Appellate Defender, by James H. Gold, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant contends that his confession was a result of his having been seized without probable cause and was introduced into evidence in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and that he is entitled to a new trial as a result. We agree and hold that the defendant is entitled to a new trial.

---

1. The defendant was convicted for an act of arson committed on 26 December 1980. At that time, G.S. 14-58 provided a mandatory life sentence for arson in the first degree. In 1979, the statute was amended to make arson in the first degree punishable as a Class C felony. 1979 N.C. Sess. Laws, ch. 760, § 5. This amendment was postponed several times and finally became effective on 1 July 1981 but was made to apply only to offenses committed on or after that date. 1979 N.C. Sess. Laws, ch. 760, § 6, as amended by 1979 N.C. Sess. Laws, 2nd Sess., ch. 1316, § 47, and 1981 N.C. Sess. Laws, ch. 63, § 1, and 1981 N.C. Sess. Laws, ch. 179, §§ 14 and 15.

Only a brief summary of the evidence introduced at trial is necessary for an understanding of the issues underlying our holding in this case. In summary, the evidence for the State tended to show in part that a fire occurred on 26 December 1980 in an apartment in Fayetteville occupied by Vernelda Lewis, a sister of the defendant. Several trained investigators testified that the fire appeared to be incendiary in nature and to have originated at several points in the apartment. The State introduced the defendant's confession in which he admitted that he set the fire at his sister's request. The defendant further stated in his confession that his sister Vernelda told him that she needed the money from the insurance on her furniture and would pay him $200 to set the apartment on fire.

The defendant introduced evidence consisting in part of alibi evidence offered through the testimony of his mother. He also introduced the testimony of his sister Vernelda Lewis who testified that she did not know who had burned her apartment and had not offered the defendant $200 to set her house on fire. On cross examination she testified that, shortly before the fire, she and the defendant engaged in an argument during which the defendant told her that "he would burn my new house down like he did my old house with me and Vera in it." The defendant offered other witnesses who testified in essence that they did not see him set fire to his sister's home.

Based on the foregoing evidence for the State and the defendant, the jury found the defendant guilty of arson in the first degree. The trial court entered judgment imposing the mandatory sentence of life imprisonment.

The defendant assigns as error the admission of his confession into evidence. He contends that his confession was the direct result of his having been interrogated after being seized by law enforcement officers without probable cause for his arrest.

[1] When a defendant has been seized without probable cause for his arrest and thereafter makes an incriminating statement, his statement must be suppressed as "the fruit of the poisonous tree" unless the effect of the unlawful seizure has been sufficiently attenuated by some intervening event occurring between the unlawful seizure and the incriminating statement. *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed. 2d 824, 99 S.Ct. 2248 (1979).

Thus, when it is determined both that a defendant was seized for Fourth Amendment purposes without probable cause and that his confession resulted from such seizure and was not attenuated by an intervening event, his confession must be suppressed. *Id.*

[2] The State has not contended at trial or during this appeal that probable cause existed to arrest the defendant prior to his confession. Therefore, we turn first to the issue of whether the defendant was seized within the meaning of the Fourth Amendment prior to making his confession. Neither the subjective beliefs of law enforcement officers nor those of a defendant with regard to whether the defendant is free to leave at will are dispositive of the question of whether he has been seized within the meaning of the Fourth Amendment. Instead, the test is objective in nature. For purposes of Fourth Amendment analysis, a person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L.Ed. 2d 497, 509, 100 S.Ct. 1870, 1877, *reh'g denied*, 448 U.S. 908, 65 L.Ed. 2d 1138, 100 S.Ct. 3051 (1980). See *State v. Davis*, 305 N.C. 400, 290 S.E. 2d 574 (1982). Therefore, in determining whether this defendant had been seized at the time of his confession, we must examine all of the circumstances surrounding his confession.

A pretrial hearing of the defendant's motion to suppress his confession was conducted on 7 December 1981 before Honorable Coy E. Brewer, Jr., Resident Superior Court Judge for the Twelfth Judicial District. The testimony taken during the course of that hearing established certain undisputed facts upon which we rely.

On 3 January 1981 Earl M. Harris and H. B. Parham, members of the Cumberland County Sheriff's Department, sought to question the defendant concerning the fire in his sister's home. At the officers' request, the defendant's mother brought him to the Cumberland County Law Enforcement Center for questioning. The defendant was questioned briefly by the officers and denied any involvement in the burning of his sister's home. The defendant was then allowed to go home with his mother.

On 3 March 1981, Deputy Parham received information from the defendant's sister concerning statements the defendant made

to her prior to the fire which tended to indicate that he might have set the fire. Deputy Parham then contacted Deputy Harris who went to the defendant's home early in the afternoon of 3 March 1981. Harris testified that at that time:

> I told him that Detective Parham had asked me to come by and pick him up because his sister had talked to Detective Parham, telling him that Kenneth had made threats to her —
>
> .  .  .  .
>
> —that morning in reference to the house in reference to an argument that—that he said she'd better quit messing with him. If not, he would burn her house down like he had the other one. I asked him to come to the office with me.

The seventeen-year-old defendant then stated that he would get his shoes and go with Harris who was then fifty years old. Harris remained in his car while the defendant went back into his home and got his shoes. Harris then took the defendant to the offices of the Detective Division in the Cumberland County Law Enforcement Center. The defendant was taken to an office which was eight feet by eight feet in size and contained a desk and other furniture. Harris gave the defendant the *Miranda* warnings at approximately 1:30 p.m. The defendant indicated that he had done nothing wrong and did not wish an attorney present during questioning. Harris questioned the defendant for a few moments and then left the room. Parham, who was forty-three years old, then entered the room and questioned the defendant alone for approximately ten to fifteen minutes. Harris then reentered the room, and the two men questioned the defendant in the small room until he confessed. The total time of questioning was approximately three and one-half hours with the defendant confessing at 5:05 p.m. The defendant was at no time advised that he did not have to go with Deputy Harris in the first instance or that he was free to leave or to contact his mother or any other member of his family.

Based upon the evidence introduced during the suppression hearing, the judge found among other things that the defendant's confession was made voluntarily and concluded that "applicable procedures concerning custodial interrogation of this defendant . . . were complied with." Based upon his findings and conclu-

sions, the judge denied the defendant's motion to suppress the confession. At trial the defendant's confession was admitted into evidence over his objection.

Only one finding of fact supporting the conclusions and order related to the custodial status of the defendant at the time of his confession. That finding was as follows:

> 3. At no time was the defendant placed under arrest by law enforcement officers. At all times the defendant had the right to terminate his involvement with law enforcement officers.

This finding was insufficient to support the conclusions and order. The finding that the defendant had not been formally arrested and that he was in fact free to terminate his involvement with law enforcement officers is relevant to the issue of whether he had been seized within the meaning of the Fourth Amendment but is not necessarily determinative of that issue.

The determination as to whether an individual has been seized within the meaning of the Fourth Amendment requires an application of fixed rules of law and a resulting conclusion of law and not a mere finding of fact. *State v. Davis*, 305 N.C. 400, 290 S.E. 2d 574 (1982). The issue is answered by determining whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Id.* No finding or conclusion concerning this question was contained in the order denying the defendant's motion to suppress his confession. This situation does not preclude us from determining the admissibility of the defendant's confession in the present case. As we have previously pointed out:

> Further, where the historical facts are uncontroverted and clearly reflected in the record, as in the present case, we may review the trial court's ruling on the admissibility of a confession in the absence of complete findings of fact and conclusions of law and even in the absence of a ruling by the trial court on the admissibility of the confession.

*State v. Davis*, 305 N.C. 400, 415, 290 S.E. 2d 574, 583 (1982). This rule applies with full force in the present case.

[3] Applying the appropriate rules, we determine that the uncontroverted evidence introduced at the suppression hearing leads to

the conclusion that the defendant was seized without probable cause within the meaning of the Fourth Amendment. During his initial request that the defendant accompany him to the Cumberland County Law Enforcement Center, Deputy Harris stated to the defendant that he was there to "pick him up." Harris accentuated this statement with an additional comment indicating that the reason the defendant was being "picked up" was that the defendant's sister had told officers that the defendant had made a statement indicating that he would burn her house down. The use of language indicating that compliance with an officer's request to accompany him might be compelled, is one of the circumstances to be considered in determining whether an individual has been seized within the meaning of the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L.Ed. 2d 497, 509, 100 S.Ct. 1870, 1877, *reh'g denied*, 448 U.S. 908, 65 L.Ed. 2d 1138, 100 S.Ct. 3051 (1980). The accusatory statement of the fifty-year-old deputy to the seventeen-year-old defendant combined with his statement that he was there to "pick up" the defendant, could have led the defendant reasonably to believe that his compliance with the deputy's request might be compelled.

So far as the record before us reveals, the defendant's only other exposure to these law enforcement officers had been on 3 January 1981. When they wished to question him on that occasion, they contacted his mother and had her bring the defendant by their offices to talk to them. Once he denied involvement in the crime under investigation on 3 January 1981, he was told he could leave and he went home with his mother. The fact that Deputy Harris did not use a similar approach on 3 March 1981, and, instead, came directly to the defendant at his home and told him that he was there to "pick him up" could well have indicated to a reasonable person that there had been some change from his former status and heightened his belief that he was not being asked to accompany the officer on a voluntary basis. In view of the peculiar set of facts and circumstances leading to and surrounding the "pick up" of the defendant on 3 March 1981, we think that a reasonable person would have believed that he was not free to leave. Therefore, we conclude that the defendant was seized without probable cause for purposes of the Fourth Amendment.

Having concluded that the defendant was seized without probable cause in violation of the Fourth Amendment, we must turn to the remaining question of whether the connection between this unconstitutional police conduct and the defendant's confession was nevertheless sufficiently attenuated to permit the use of the confession at trial. *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed. 2d 824, 99 S.Ct. 2248 (1979). We conclude that it was not.

Nothing which occurred in the Cumberland County Law Enforcement Center after the defendant was taken there by Harris on 3 March 1981 would have had a tendency to indicate to the defendant that he was free to leave. In fact, taken in light of the foregoing circumstances, the events occurring there made a belief that he was not free to leave even more reasonable. The seventeen-year-old defendant was at all times kept in an eight-foot by eight-foot office which was made even smaller for practical purposes by the presence of a desk. For three and one-half hours, one or the other of the officers or both of them questioned the defendant in that room. Although he continued to deny any involvement in the crime under investigation, the questioning continued without the defendant being given any indication that he was free to leave or that he could contact his mother or other members of his family as had been permitted during the 3 January 1981 questioning.

[4] Judge Brewer's conclusion that the defendant's confession was voluntary for purposes of the Fifth Amendment is binding upon us as it is supported by his findings of fact which are in turn supported by the evidence. The conclusion that the defendant's confession was voluntary for Fifth Amendment purposes, however, is not sufficient by itself to attenuate the taint of a confession given after a defendant has been unconstitutionally seized. The voluntariness of a confession for the purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment analysis. *Brown v. Illinois*, 422 U.S. 590, 604, 45 L.Ed. 2d 416, 427, 95 S.Ct. 2254, 2262 (1975). "Indeed, if the Fifth Amendment has been violated, the Fourth Amendment issue would not have to be reached." *Dunaway v. New York*, 442 U.S. 200, 217, 60 L.Ed. 2d 824, 839, 99 S.Ct. 2248, 2259 (1979). Instead, the relevant focus must be on "the causal connection between the illegality and the confession." *Brown v. Illinois*, 422 U.S. 590, 603,

45 L.Ed. 2d 416, 427, 95 S.Ct. 2254, 2261 (1975). Here, as in *Brown*, there was no intervening attenuating event of significance during the approximately three and one-half hours between the seizure of the defendant and his confession. We conclude, therefore, that the State failed to show that the effect of the unlawful seizure had been sufficiently attenuated at the time the defendant confessed to render the confession admissible. The burden of showing such admissibility rests, of course, with the State. *Dunaway v. New York*, 442 U.S. 200, 218, 60 L.Ed. 2d 824, 839, 99 S.Ct. 2248, 2259 (1979).

Our disposition of the defendant's first assignment of error makes it unnecessary for us to consider his remaining assignments. Such errors, if any, are not likely to recur during a new trial. As a result of the erroneous admission into evidence of the defendant's confession, the defendant is entitled to a

New trial.

Justice MEYER dissenting.

I first take issue with the majority's failure to clearly distinguish the fourth and fifth amendment issues. The majority correctly summarizes the law in *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed. 2d 824 (1979), in stating that a lawfully obtained confession must be suppressed if it is the result of a fourth amendment violation unless found to be a product of free will. Thus the focus must be on whether there was a seizure within the meaning of the fourth amendment's prohibition against seizure prior to the confession. In applying this law to the facts, the majority relies on fifth amendment factors irrelevant to the question of the seizure: we are told repeatedly that the defendant was *questioned* in a small room, and that he was *questioned* for 3½ hours after being given his *Miranda* warnings and before he confessed. The events which transpired subsequent to the time the defendant was given his *Miranda* warnings do not bear on the question of the seizure. The majority concedes that defendant's confession was voluntary for purposes of the fifth amendment. Thus, absent an unreasonable "seizure," the interrogation was lawfully conducted and the confession was legally obtained.

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained."

State v. Freeman

*United States v. Mendenhall,* 446 U.S. 544, 553, 64 L.Ed. 2d 497, 509 (1980). Seizure of an individual occurs at *a given point in time* when it is determined that there has been an intrusion of the constitutionally protected right to be secure in his person. *See Terry v. Ohio,* 392 U.S. 1, 20 L.Ed. 2d 889 (1968). Thus, for purposes of determining whether this defendant was seized, the proper circumstances, and the only circumstances relevant to the inquiry are those surrounding his decision to leave his home and accompany the officers elsewhere for questioning.

Secondly, I disagree with the majority's conclusion that defendant's confession must be suppressed as the result of an "unlawful seizure." On this question, the pertinent inquiry is:

1. Was there a fourth amendment violation; that is, was there a seizure tantamount to an arrest or a technical arrest?

2. If so, was there probable cause?

3. Was the confession the result of the seizure — or was the confession, nevertheless, a product of free will?

I

The most recent statement concerning fourth amendment violations is enunciated in *United States v. Mendenhall,* 446 U.S. 544, 64 L.Ed. 2d 497. In that case the Court stated: "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554, 64 L.Ed. 2d at 509. As the majority correctly points out, this is an objective test. Age, education and race of the defendant are not decisive factors. It is not necessary that the defendant be expressly told that he is free to leave or that he need not cooperate. *Id.*

Certain objective factors have been considered in determining whether there has been a seizure of the person. These are:

1. The threatening presence of several officers

2. Display of a weapon

3. A physical touching of the person

4. The use of language or tone of voice indicating that compliance might be compelled.

*Id.* at 554, 64 L.Ed. 2d at 509.

A careful reading of the majority opinion suggests an unwarranted emphasis on the two factors which the *Mendenhall* Court specifically rejected: the age of the defendant (or the age difference between the defendant and the officers), and the fact that defendant was never expressly told that he was free to leave or that he need not cooperate. Furthermore, in applying the facts to the objective factors listed above, we find that:

1. Only one officer came to the defendant's home. This officer was known to the defendant, and had, on a prior occasion, questioned the defendant at the police station and released him after a short period of time.

2. There was no display of a weapon.

3. There was no physical touching of the defendant. In fact, he was permitted to return to the inside of his house for his shoes while the officer waited in his car.

4. The *only* possible basis for finding that defendant was "seized" was the statement of the officer that he had come "to pick up" the defendant. He then *asked* the defendant to accompany him to the office.

Disregarding the factors surrounding the questioning after *Miranda* warnings were given, and placing the age factor, and the fact that defendant was not told he was free to leave, in proper perspective, we are left with little else except a single phrase, "to pick up," to support a finding that defendant's fourth amendment rights were violated. Although this phrase *might* indicate that "compliance *might* be compelled," standing alone it does not suffice to justify the conclusion that defendant's fourth amendment rights were violated and that as a result of a purported "seizure" of his person, his confession must be suppressed.

II

The majority opinion states that "[t]he State has not contended at trial or during this appeal that probable cause existed to arrest the defendant prior to his confession." Assuming *arguendo* that this defendant was technically arrested or detained without a warrant, if the officer had probable cause to arrest the defendant, no fourth amendment violation could have taken place. I

would recommend, as did Justices Powell and Rehnquist in their concurring opinion in *Brown v. Illinois*, 422 U.S. 590, 45 L.Ed. 2d 416 (1975), that the case be remanded for findings on this important question. There is ample evidence in the record that would support a conclusion that the decision to question the defendant was based on more than an expedition embarked upon for evidence "in the hope that something might turn up." *Id.* at 605, 45 L.Ed. 2d at 428. The investigation into the arson had been continuing for some time; the defendant was a suspect and had been questioned; additional evidence had come to the attention of the officers suggesting that the defendant was, in fact, responsible for the arson.

### III

In *Brown*, the Supreme Court rejected the *per se* rule that *Miranda* warnings alone are sufficient to attenuate the taint of an unconstitutional arrest, stating that "whether a confession is the product of a free will . . . must be answered on the facts of each case. No single fact is dispositive" although "the *Miranda* warnings are an important factor." *Id.* at 603, 45 L.Ed. 2d at 427. "The temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . *and, particularly, the purpose and flagrancy of the official misconduct are all relevant.*" *Id.* at 603-604, 45 L.Ed. 2d at 427 (emphasis added).

Given the deterrent purposes of the exclusionary rule to remove the possibility of police misconduct, whether the police misconduct was flagrantly abusive of fourth amendment rights is a critical, if not the most important focus for inquiry. For purposes of this inquiry, our own statutory exclusionary rule offers guidance. It provides:

§ 15A-974. *Exclusion or suppression of unlawfully obtained evidence.*—Upon timely motion, evidence must be suppressed if:

(1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina; or

(2) It is obtained as a result of a substantial violation of the provisions of this Chapter. In determining wheth-

er a violation is substantial, the court must consider all the circumstances, including:

a. The importance of the particular interest violated;

b. The extent of the deviation from lawful conduct;

c. The extent to which the violation was willful;

d. The extent to which exclusion will tend to defer future violations of this Chapter. (1973, c. 1286, s. 1.)

The official commentary is of particular interest:

An important point to note is that subdivision (1) only requires suppression of evidence if its exclusion is constitutionally required. It is possible then that evidence may be gathered in violation of constitutional rights, *but suppression is not the sanction to be applied unless authoritative case law so declares. There are indications that the Burger Court will moderate some of the exclusionary rules, and this section is designed not to freeze North Carolina's statutory law into patterns set solely by current case law.*

(Emphasis added.)

I would hold that there is no authoritative case law *requiring* the suppression of this evidence; in fact, a reading of the Supreme Court decisions on this issue militates against the exclusion of the evidence. Nor can I agree that the alleged violation of defendant's fourth amendment rights was "substantial" when the following are considered:

a. Any intrusion on defendant's interest in personal privacy was not unnecessarily extensive.

b. The officer's conduct was not unreasonably abusive or threatening; that is, the officer acted in good faith and conducted himself with professional courtesy and demeanor.

c. There was indicia of probable cause sufficient to indicate that the violation was not willful.

d. The exclusion of the subsequent lawfully obtained confession would have no tendency to deter this alleged violation.

Under these circumstances, I would hold that the *Miranda* warnings given to the defendant were sufficient attenuation to remove the taint of any purported seizure.

I would vote to rely on the " 'learning, good sense, fairness and courage' " of the trial judge who made the determination in the first instance, and allow the confession into evidence (*Id.* at 612, 45 L.Ed. 2d at 432 (Powell, J. and Rehnquist, J. concurring) ), or in the alternative to remand for findings on the existence of probable cause.

Justices COPELAND and MARTIN join in this dissenting opinion.