STATE OF NORTH CAROLINA v. JAMES THOMAS SUGG, II

No. 8226SC654

(Filed 1 March 1983)

**Searches and Seizures §§ 12, 33— investigatory stop—seizure of person—seizure of cocaine in plain view**

　　Defendant was lawfully seized upon a reasonable and articulable suspicion that he was engaged in criminal activity and thereafter voluntarily relinquished his briefcase and accompanied officers where the officers saw defendant disembark from an airline flight from Florida at an airport in Charlotte; the officers knew the flight was connected to Florida cities which are points of entry for narcotics smuggling; defendant was the first person off the airplane, was casually dressed, appeared to be unusually nervous, and carried only a briefcase; defendant repeatedly glanced back at the officers following him as he walked through the terminal; defendant met another man at the airport gift shop with whom he walked to the terminal parking lot; an officer approached defendant, obtained defendant's consent to speak with him, and asked defendant to show him his plane ticket and some identification; the officer noticed that the ticket was purchased for cash and was for a round-trip flight returning to Florida some 3-½ hours later; defendant became increasingly nervous, and his companion began denying any involvement in the affair; the officer informed defendant he was conducting a narcotics investigation and asked if he could search defendant's person and briefcase; when defendant declined, an officer informed defendant that he was free to go but that the officers would detain his briefcase for further investigation; and after telephoning his attorney, defendant voluntarily relinquished his briefcase to the officers and accompanied them to their office. Furthermore, officers lawfully seized cocaine from defendant's briefcase pursuant to the "plain view" doctrine where defendant requested permission to remove some personal papers from the briefcase, opened the briefcase and a leather pouch therein in the officers' presence, and exposed to the officers' view a plastic bag containing a white powder which appeared to the officers to be cocaine.

APPEAL by defendant from *Burroughs, Judge.* Judgment entered 28 January 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 11 January 1983.

The defendant was charged in a proper bill of indictment with possession with intent to sell and deliver a controlled substance (cocaine) in violation of G.S. 90-95(a)(1). Defendant's motion to suppress evidence on grounds of an unlawful search and seizure was denied. Pursuant to G.S. 15A-979, defendant appeals from entry of judgment against him and seeks review of the denial of his motion to suppress.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*Henry T. Drake for defendant-appellant.*

HILL, Judge.

On 28 April 1981, defendant James Thomas Sugg, II, a commercial airline passenger, was questioned at Douglas Municipal Airport in Charlotte, North Carolina, by a law enforcement officer who believed defendant's behavior was within the Federal Drug Enforcement Agency drug courier profile. Sugg was charged with possession with intent to sell and deliver the cocaine subsequently seized from his briefcase. From an order of the hearing judge entered 6 August 1981 denying his motion to suppress evidence of the cocaine, Sugg gave notice of appeal. He later pleaded guilty to the offense charged, reserving his right to appellate review of the order denying his motion to suppress.

Defendant contends that: (1) the hearing judge failed to make the proper findings and conclusions in support of his denial of defendant's motion to suppress, and (2) the seizure of contraband from defendant's briefcase violated the Fourth and Fourteenth Amendments of the United States Constitution. We find, however, that the evidence submitted at hearing supports the judge's denial of the motion and that the seizure of the contraband was proper. We, therefore, affirm the order of the hearing judge.

Special Agents Davis and Gross of the State Bureau of Investigation saw James Thomas Sugg, II, deplane from Eastern Airlines Flight 386 from Florida at Douglas Municipal Airport in Charlotte. Sugg, casually dressed and carrying a Halliburton briefcase, was apparently the "first one off the aircraft." He "made immediate eye contact" with Davis, "appeared . . . to be nervous," and repeatedly glanced back at the officers following him as he walked through the terminal. Sugg met another man at the airport gift shop with whom he walked to the terminal parking lot.

Approaching Sugg and his companion, Davis identified himself and asked if he could speak with Sugg. Sugg assented, and Davis asked Sugg to show him his plane ticket and some iden-

tification. Davis noticed the ticket had been purchased with cash and was for a round-trip flight from West Palm Beach, Florida, through Atlanta, Georgia, to Charlotte, returning some 3 to 3-½ hours later. Although Sugg apparently carried a Florida driver's license and said he lived in Hawaii, he produced a North Carolina license bearing an Ellerbe, North Carolina, address. Sugg said he was, in fact, going to Ellerbe that day.

Davis then informed Sugg he was conducting a narcotics investigation and asked if he could conduct a search of Sugg's person and briefcase. When Sugg demurred, Davis said that Sugg was free to leave, but Davis would hold his bag "and attempt to obtain a search warrant." Sugg's companion immediately "said something to the effect, 'I'm not involved in this. I just came to give him a ride.'" Sugg indicated he wanted to talk to his attorney, and Davis invited him to do so.

After telephoning his attorney, Sugg released his bag to the officers; and upon being asked to provide further identification, accompanied Davis and Gross to their office in the terminal. Once there, Sugg requested permission to remove some personal papers from his briefcase which he opened in the officers' presence. He opened, as well, a leather pouch that was inside the briefcase and, in doing so, exposed a plastic bag containing cocaine. He was immediately placed under arrest, and his briefcase was searched.

The determinative issue of defendant's assignments of error is whether the initial intrusion by the officer, which eventually led to the officers' observation of the cocaine seized, infringed upon defendant's rights under the Fourth Amendment to the U.S. Constitution. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971), established that objects in plain view of an officer who is *rightfully* in a position to see those objects may be seized without obtaining a search warrant. Thus, the legality of the officer's stop of defendant is critical.

I.

U. S. Supreme Court holdings carve out, at least theoretically, three tiers of police encounters: communication between the police and citizens involving no coercion or detention and therefore outside the compass of the Fourth Amendment, brief

"seizures" that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause. *United States v. Berry*, 670 F. 2d 583 (5th Cir. 1982) (*en banc*). "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry v. Ohio*, 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed. 2d 889, 913 (1968) (White, concurring). Indeed, a police officer may in appropriate circumstances and in an appropriate manner question persons, even though there is no probable cause for an arrest. 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906. Whenever, however, a police officer "accosts an individual and restrains his freedom to walk away, he has 'seized' that person," 392 U.S. at 16, 88 S.Ct. at 1877, 20 L.Ed. 2d at 903, and is required to show that the seizure (1) was brief, *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed. 2d 824 (1979), and (2) was supported at least by a reasonable and articulable suspicion that the person seized was engaged in criminal activity. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed. 2d 357 (1979). This rationale, which initially applied to stops for questioning, *see Terry v. Ohio*, has been extended to stops made for investigatory purposes, as well: "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed. 2d 612, 617 (1972); *see United States v. Brigoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed. 2d 607 (1975). The standard suggested by the foregoing principles and adopted by the Supreme Court of North Carolina in *State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776 (1979) "requires only that the officer have a 'reasonable' or 'founded' suspicion as justification for a limited investigative seizure." *Id.* at 706, 252 S.E. 2d at 779.

## II.

We note that whether the officer's conduct in this case constituted a "seizure" that invoked Fourth Amendment protections is problematic. All too often, subtle differences in circumstances distinguish a "non-seizure," which does not invoke Fourth Amendment safeguards, from a "seizure," which does. We believe that the officer's conduct was constitutionally proper under the standards governing an actual "seizure." At some point in the encounter, the officer effected a "seizure" of the defendant. Thus,

we must consider both the articulable facts known to Davis at the time he determined to approach Sugg and his companion, and the rational inferences that the officer was entitled to draw from these facts. In so doing, we analyze the circumstances as a whole "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Hall,* 525 F. 2d 857, 859 (D.C. Cir. 1976); *State v. Thompson, supra.*

Relying on evidence presented at hearing and on the court's findings of fact which are supported by competent evidence and thus conclusive, *State v. Thompson,* we consider the facts and inferences upon which the officer's conduct was predicated. Officer Davis saw Sugg disembark from Eastern Airlines Flight 386. Davis "knew [the flight] was connected to Florida source cities" which are points of entry for narcotics smuggling, cocaine, in particular. Sugg was "the first individual off the airplane," apparently "scanned" the area "to see who was out there," was casually dressed and appeared to be unusually nervous. He carried only a Halliburton briefcase, luggage that, in his 7 years' experience in criminal investigations of narcotics, Davis had come to associate with drug couriers. Sugg met another man with whom he hurriedly left the terminal, frequently glancing back at Davis. Davis's initial stop of Sugg certainly was within the officer's prerogative merely to approach and question a citizen in a public place. *See Terry v. Ohio, supra; United States v. Berry, supra.* Given Sugg's conduct and appearance, which by his experience and familiarity with the drug courier profile Davis had come to associate with the typical drug courier, further investigation was warranted.

Davis requested identification, and Sugg produced a North Carolina driver's license, saying that he lived in Hawaii. Davis noticed Sugg also appeared to be carrying a Florida driver's license in possible violation of the law. Davis examined Sugg's plane ticket and found that: (1) Sugg had boarded in West Palm Beach, Florida, a known "source city" for cocaine, (2) Sugg had purchased the ticket in cash, and (3) perhaps most significantly, the ticket was for a round-trip flight, returning to West Palm Beach in 3 to 3-½ hours. Sugg said he was going to Ellerbe, North Carolina, a city that Davis reasonably concluded was far too distant from the Charlotte airport for Sugg to make the return flight. Sugg became increasingly nervous, and his compan-

ion began denying any involvement in the affair. These circumstances, as a whole characteristic of those engaged in the drug trade and consistent with the officer's experience in narcotics investigation, would, we believe, justify a reasonable suspicion that Sugg might be engaged in or connected with criminal activity. On that basis, we find that the officer acted within the confines of the Fourth Amendment in approaching Sugg and seeking identification and further information from him.

There is no significant claim that Sugg's cooperation beyond this point was involuntary. Davis had informed Sugg that he was free to go but that the officers would detain the bag for further investigation. After speaking with his attorney, Sugg voluntarily relinquished his briefcase to the officers and accompanied them to their office.

### III.

Having concluded that defendant was legally seized upon a reasonable and articulable suspicion that he was engaged in criminal activity and that he thereafter voluntarily relinquished his briefcase and accompanied the officers, we consider whether the cocaine was properly seized pursuant to the "plain view" doctrine. The constitutional guaranty against unreasonable searches and seizures applies only to those instances in which the seizure is assisted by a necessary search. "It does not prohibit a seizure without warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand." 47 Am. Jur., Searches and Seizures, § 20; *State v. Duboise,* 279 N.C. 73, 84, 181 S.E. 2d 393, 400 (1971). The plain view doctrine may properly be invoked where the following elements concur:

1. the prior intrusion must be valid;

2. the discovery must be inadvertent;

3. the evidence must be immediately apparent as such; and

4. the evidence must be in plain view.

*Coolidge v. New Hampshire, supra; State v. Wynn,* 45 N.C. App. 267, 267-268, 262 S.E. 2d 689, 691 (1980).

The "valid intrusion" element has been applied liberally where the police discover evidence in plain view; in general, it is

only required that the officer have legal justification to be at the place where he or she sees evidence in plain view. *State v. Thompson, supra; State v. Wynn, supra.* The officers legally "seized" defendant who later voluntarily accompanied them to their office. Clearly, the officers had legal justification to be with defendant in their office. Defendant himself exposed the contraband to view when, at his request and in the officers' presence, he opened his briefcase and the pouch containing the contraband. The testimony at hearing indicates the officers were surprised that Sugg opened the briefcase and bag in their presence. The evidence reveals that when defendant opened his pouch the officers plainly saw a plastic bag containing what appeared to them to be cocaine, and that, in any event, they reasonably believed an offense was being committed in their presence. *State v. Wynn, supra. See* also *State v. Prevette,* 43 N.C. App. 450, 259 S.E. 2d 595 (1979), *disc. rev. denied,* 299 N.C. 124, 261 S.E. 2d 925 (1980); and *United States v. Drew,* 451 F. 2d 230 (5th Cir. 1971).

We find, under the circumstances, that the seizure of the controlled substance was pursuant to the plain view doctrine and attendant to a prior legal investigatory stop. The hearing judge properly denied defendant's motion to suppress. The judgment below is

Affirmed.

Judges ARNOLD and WHICHARD concur.