STATE v. BROOKS

[111 N.C. App. 558 (1993)]

STATE OF NORTH CAROLINA v. ROBERT EARL BROOKS

No. 924SC342

(Filed 17 August 1993)

1. **Searches and Seizures § 12 (NCI3d)— officer's approach of defendant's vehicle—questions about holster—conduct amounting to investigatory stop or seizure**

   An SBI agent's conduct amounted to an investigatory stop or seizure where the agent and other law enforcement officers drove into the parking lot of a nightclub with a valid warrant to search the club; the agent observed defendant sitting in his car with the door open talking to a person who was standing outside the car; wearing a utility uniform, bullet proof vest marked "raid," a badge, and an SBI baseball cap, the agent walked toward the vehicle to speak with defendant; and the agent approached the vehicle, shined his flashlight in on defendant, immediately asked questions regarding an empty gun holster, and subsequently asked whether illegal drugs were present in the car.

   **Am Jur 2d, Searches and Seizures §§ 28, 57, 187, 190.**

2. **Searches and Seizures § 12 (NCI3d)— agent's approaching and detaining defendant—no reasonable suspicion of criminal activity**

   An SBI agent was not entitled to approach and detain defendant for investigative purposes and his conduct in doing so was not based on a reasonable suspicion based on articulable facts and rational inferences to be drawn therefrom where the agent and other officers went to a nightclub with a valid search warrant; there was no warrant to search the exterior premises nor was there evidence that police had a reason to suspect that drug sales were taking place in the parking lot; the agent stated that he thought it suspicious that defendant was backed into the parking lot with his door open talking to a person who was standing beside the car; the agent saw nothing pass between defendant and the person standing outside the car; and the actions the agent observed were not sufficient to create a reasonable suspicion that defendant was involved in criminal conduct.

STATE v. BROOKS

[111 N.C. App. 558 (1993)]

**Am Jur 2d, Searches and Seizures §§ 28, 57, 187, 190.**

Judge GREENE dissenting.

Appeal by defendant from order entered 24 October 1991 by Judge Henry L. Stevens, III in Duplin County Superior Court. Heard in the Court of Appeals 1 April 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James Peeler Smith, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

WYNN, Judge.

Defendant was initially indicted by a Federal Grand Jury on 11 December 1990 for Possession With Intent to Distribute Crack Cocaine in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(B) and Possession of a Firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Section 924(c). Defendant made a Motion to Suppress Evidence. Following a hearing on the matter, the Honorable James C. Fox, United States District Court Judge for the Eastern District of North Carolina, granted defendant's motion, finding that the defendant was unlawfully arrested and detained and that both he and his vehicle were searched without probable cause and thus, the "fruits" of the search as well as any incriminating statements that defendant allegedly made should be suppressed. The charges against the defendant in United States District Court were subsequently dismissed voluntarily by the United States Attorney's office.

On 1 April 1991, defendant was indicted by the Grand Jury of Duplin County for possession of cocaine with the intent to manufacture, sell and deliver, trafficking in cocaine by possession, carrying a concealed weapon, and maintaining a vehicle for sale of controlled substances. Defendant again moved to suppress the physical evidence and his statements to the police. The State and the defendant offered evidence at the suppression hearing. From that evidence the trial court made the following pertinent findings of fact in its Order:

1. That on July 27, 1991, SBI Agent Bruce Kennedy accompanied members of the Duplin County Sheriff's Department to a place called Hezekiah Carter's Nightclub, located outside

of the city limits of Magnolia, Duplin County to execute a search warrant for the purposes of locating illegal controlled substances.

2. That Special Agent Kennedy wore a marked "raid" jacket with a badge on the front, and "POLICE" written in big letters across the back. Moreover, Special Agent Kennedy was wearing a baseball cap with the letters SBI across the top of the cap. That three law enforcement vehicles arrived at the same time and that one or more of the vehicles were marked police cars.

3. That upon arriving at the location to be searched, S/A Kennedy observed a green Volkswagon car backed in the parking lot with a man in it sitting on the driver's seat. Also S/A Kennedy saw another black male standing in front of the car. The time was approximately 9:40 p.m.

4. S/A Kennedy exited the vehicle he was riding and walked down across the ditch and over to the driver's side of the vehicle, in question, where the defendant was sitting on the driver's seat. The other black male that had been standing next to the vehicle walked away before S/A Kennedy was able to arrive at the car.

5. S/A Kennedy shined his flashlight on the defendant in the car. S/A Kennedy observed on the passenger side of the bucket seats of the Volkswagon an empty unsnapped holster within reach of the defendant who was sitting in the driver's seat.

6. S/A Kennedy asked the defendant, "where is your gun?" The defendant replied, "I'm sitting on it." S/A Kennedy was still unable to see the gun although he shined his light all about the vehicle.

7. S/A Kennedy then requested the defendant to "ease it out real slow." The defendant reached under his right thigh and handed the officer his gun by the grips. S/A Kennedy took the gun from the defendant and put it on top of the defendant's car and then received the holster from the defendant. The Defendant told S/A Kennedy, "be careful, it's got a round in the chamber; it's loaded and there is a round in the chamber." At the very moment S/A Kennedy asked the defendant to hand out his gun, S/A Kennedy put his hand on his gun, but just for a second. After retrieving the gun from the defendant,

S/A Kennedy did not stand holding his gun or towering over him. The gun was a .32 calibre semi-automatic gun made by Davidson.

8. The defendant then volunteered that he had got the permit for said gun from the Sheriff of Lenoir County, Billy Smith.

9. The defendant then asked S/A Kennedy if he needed to see some identification. S/A Kennedy replied, "yes sir," at which time, the defendant handed his North Carolina Driver's License to S/A Kennedy along with the registration for the said Volkswagon. The defendant was permitted to exit his vehicle on several occasions including getting outside the vehicle and assisting Officer Jones to open the hood of said vehicle.

10. That S/A Kennedy did not place the defendant under arrest for carrying a concealed weapon; instead he asked the defendant, "Robert Earl, do you have any dope in this car?" The defendant replied, "no, do you want to look?" The defendant further stated that the officer could look if he wanted to.

11. The defendant then proceeded to search his own car. The defendant showed S/A Kennedy where there was a compartment in the back seat of the vehicle where the defendant had built some speakers in the car and he showed the officer how the front part would lay down. There was nothing found in said compartment.

The trial judge further found that defendant removed the board and laid it on top of two nylon bags which were in the back floor board behind the driver's seat. Agent Kennedy asked if he could see the bags and defendant placed them on the ground beside the car. When Agent Kennedy could not find the zipper on the first bag, defendant opened it for him. The first bag contained digital scales of the type frequently used for measuring narcotics. Defendant stated that he used the scales to measure his medicine. The second bag contained two small bags filled with white powder and a number of small plastic bags with zip-locks.

Agent Kennedy asked, "Robert Earl, is this your dope?" Defendant replied, "Yes." Agent Kennedy also asked, "How much you reckon you have got here" and defendant replied, "About an ounce." At that point, Agent Kennedy advised defendant that he was under arrest for possession of drugs. Defendant was not handcuffed during the search and Agent Kennedy did not have his gun drawn.

Defendant was charged with drug possession and taken to the Sheriff's Department where he went through formal processing. At the time of the arrest, defendant had $3,300 in cash on his person. The S.B.I. laboratory later determined the white powder to be 70 grams of cocaine.

According to defendant's testimony, he was not sitting on the firearm, rather it was in plain view. Further, he did not consent to the search of the car nor admit that the drugs found were his. Defendant testified that he did not know the drugs were in his car and he did not know who owned them. The trial judge found as fact however that "in so far as there are conflicts in the testimony of S/A Kennedy and the defendant, the Court resolves the issues of credibility in favor of S/A Kennedy."

Defendant's motion to suppress was denied as to the evidence seized from defendant's person and automobile and all statements prior to the seizure of the scales and drugs. The motion was granted as to the incriminating statements made by defendant subsequent to the discovery and seizure of the scales and drugs. Defendant was subsequently charged with perjury for allegedly false testimony given during the *voir dire* hearing on his motion to suppress. Defendant, reserving his right to appeal denial of his motions, tendered pleas of no contest to the charges of possession, trafficking, carrying a concealed weapon and perjury. The felonies were consolidated for judgment and defendant was sentenced to seven years imprisonment. From the trial court's denial of his motion to suppress, defendant appeals.

I.

By defendant-appellant's first assignment of error he contends that the trial court erred in denying his motion to suppress the physical evidence seized from the warrantless search of his vehicle and his inculpatory statements, because 1) the officer did not have a reasonable suspicion to approach defendant's car; 2) the officer did not give the proper *Miranda* warnings prior to questioning; and 3) Agent Kennedy did not have probable cause to search the vehicle.

The scope of appellate review for the denial of a motion to suppress is limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and whether those findings of fact in turn

support the conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). The conclusions of law are, however, reviewable. *State v. Simpson*, 320 N.C. 313, 325, 357 S.E.2d 332, 339 (1987), *cert. denied*, 485 U.S. 963, 99 L.Ed.2d 430 (1988).

Based upon his findings of fact, the judge concluded as a matter of law:

> 1. That S/A Kennedy *had a reasonable suspicion of criminal activity that justified his action* in order to confirm or to dispel his suspicion *when he exited his patrol car and walked over to the defendant's vehicle to investigate.* That S/A Kennedy was authorized to shine his flashlight into the defendant's vehicle for his own protection and to conduct an initial inquiry.

> 2. That defendant was not under arrest or in custody when S/A Kennedy asked the defendant where the gun was.

Having thoroughly reviewed the evidence introduced at the *voir dire* hearing and the trial court's findings and conclusions, we conclude that the trial court's findings are supported by competent evidence. Defendant argues, and we agree however, that the trial court's findings of fact were insufficient to support the trial court's conclusion that Agent Kennedy had a "reasonable suspicion of criminal activity that justified his action in order to confirm or to dispel his suspicion *when he exited* his patrol car and approached the defendant's car." In determining if this conclusion of law is supported by the findings, we must examine whether the officer's action constituted a seizure, and if so, whether that seizure was legally justified. *State v. Fleming*, 106 N.C. App. 165, 168, 415 S.E.2d 782, 784 (1992).

[1] The State argues, and we recognize that "[no] one is protected by the Constitution against the mere approach of police officers in a public place." *State v. Swift*, 105 N.C. App. 550, 554, 414 S.E.2d 65, 68 (1992) (quoting *State v. Streeter*, 283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973)). *See also State v. Thompson*, 296 N.C. 703, 705, 252 S.E.2d 776, 778, *cert. denied*, 444 U.S. 907, 62 L.Ed.2d 143 (1979). Thus, "communication between the police and citizens involving no coercion or detention . . . [falls] outside the compass of the Fourth Amendment." *State v. Sugg*, 61 N.C. App. 106, 108, 300 S.E.2d 248, 250, *disc. rev. denied*, 308 N.C. 390, 302 S.E.2d 257 (1983). Brief seizures however, must be supported by reasonable suspicion. *Id.* at 109, 300 S.E.2d at 250. Subtle differences in cir-

cumstances however, often distinguish a "non-seizure," which does not invoke Fourth Amendment safeguards, from a "seizure" which does. *Id.* "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L.Ed.2d 497, 509 (1980).

The United States Supreme Court long ago broadened the range of encounters between the police and citizens encompassed within the term "seizure," while at the same time lowering the standard of proof necessary to justify a "stop" for an investigative purpose. *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889 (1968). In applying that principle in *Brown v. Texas*, 443 U.S. 47, 61 L.Ed.2d 357 (1979), the Supreme Court later stated:

> We have recognized that in some circumstances an officer may detain a suspect briefly for questioning, although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.

*Id.* at 51, 61 L.Ed.2d at 362 (citations omitted). When a law enforcement officer "stops" a vehicle or individual for an investigative purpose, a "seizure" is accomplished. *See, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed.2d 607 (1975); *Thompson*, 296 N.C. 703, 252 S.E.2d 776; *State v. McDaniels*, 103 N.C. App. 175, 405 S.E.2d 358 (1991).

In this case, the undisputed evidence indicates that upon arrival and seeing defendant sitting in his car talking to another individual, Agent Kennedy "told the guys [he] was riding with to just let [him] out . . . and [he] would go check this Volkswagon." Wearing a utility uniform, bullet proof vest marked "raid," a badge and an S.B.I. baseball cap, Agent Kennedy walked toward the vehicle to speak with defendant. He approached the vehicle, shined his flashlight in on defendant, immediately asked questions regarding the empty holster and subsequently asked whether illegal drugs were present in the car. This conduct amounted to an investigatory stop or "seizure." As a result, we examine whether the officer was entitled to approach and detain the defendant for investigative purposes and the reasonableness of his conduct in doing so.

STATE v. BROOKS

[111 N.C. App. 558 (1993)]

**[2]** The standard established in *Terry* was adopted by our North Carolina Supreme Court and requires "that an officer have a 'reasonable' or 'founded' suspicion as justification for a limited investigative seizure." *Thompson*, 296 N.C. at 706, 252 S.E.2d at 779. To constitute a valid and constitutional investigative stop, the officers' actions must be both "justified at the inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* The standard of reasonable suspicion to justify an investigatory search requires the court to "examine both the articulable facts known to the officer[ ] at the time [he] determined to approach and investigate the activities of [a defendant], and the rational inferences which the officer[ ] [was] entitled to draw from those facts." *Id.* These circumstances should be viewed as a whole "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *Id.* (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976)). As a result, the stop must be based upon a reasonable and articulable suspicion that the person stopped "is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 66 L.Ed.2d 621 (1981); *see Swift*, 105 N.C. App. at 555, 414 S.E.2d at 68 (where officers observed defendant emerge from car in Fast Fare parking lot and place a beer can on the ground, this action constituted a misdemeanor and provided a "reasonable suspicion to believe" that the defendant committed a misdemeanor and thereby warranted an approach to investigate).

Applying the above principles to the facts in this case, we must consider both the articulable facts known to Agent Kennedy at the time he determined to approach Brooks, and the rational inference that the officer was entitled to draw from these facts. Agent Kennedy and the other officers went to the night club with a valid search warrant for the premises. There is no evidence in the record of a warrant to search the exterior premises, nor any evidence that the police had a reason to suspect that drug sales were taking place in the parking lot. In addition, the State points to no evidence which supports a finding that the agent had a reasonable suspicion that this defendant was engaged in illegal activity at the time Agent Kennedy approached the vehicle. At the *voir dire* hearing, Agent Kennedy testified on cross examination that he did not see anything pass between the defendant and the unidentified male standing outside of defendant's car. Rather, he stated that he found suspicious the way that defendant was

backed into the parking lot and that defendant was sitting in his car talking with the door open. Agent Kennedy simply observed the men talking in the parking lot of a night club at approximately 9:40 p.m. These actions were not sufficient to create a reasonable suspicion that defendant was involved in criminal conduct, it being neither unusual nor suspicious to sit in one's car, with the door open, and talk to a person standing outside the car. Agent Kennedy testified as to only a generalized suspicion based on the time, the place and the fact that drugs had been sold at this establishment. Absent more specific information that would indicate at least that drugs were being sold outside in the parking lot, the officer had no real reason to suspect that criminal activity was abreast.

These facts are similar to those in *Fleming*, 106 N.C. App. 165, 415 S.E.2d 782, in which the officer had only a generalized suspicion that the defendant was engaged in criminal activity, based upon the fact that the defendant and a companion were standing between two apartment buildings, at midnight, in a "high drug area," and based upon the officer's knowledge that the defendant was unfamiliar to the area. This Court found these facts insufficient to support a conclusion that the officer had a reasonable and articulable suspicion that the defendant was engaged in criminal activity. To conclude otherwise, "would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches which the Fourth Amendment is specifically designed to protect against." *Id.* at 171, 415 S.E.2d at 786 (citing *Terry*, 392 U.S. 1, 20 L.Ed.2d 889).

Here all of the evidence indicates that the officer approached defendant's vehicle because he thought the defendant looked suspicious sitting in his car talking to an individual outside of the car. Agent Kennedy suspected that a drug deal was underway. This suspicion was not based upon any "specific or articulable facts" to warrant the intrusion. Moreover, the trial court did not make a factual finding to support its conclusion that Agent Kennedy "had a reasonable suspicion of criminal activity that justified his action in order to confirm or dispel his suspicion." For the foregoing reasons we hold that the initial intrusion of defendant's privacy rights was invalid and in violation of his Fourth Amendment right against unreasonable searches and seizures. His observation of the empty holster flowed from this initial invalid intrusion.

STATE v. BROOKS

[111 N.C. App. 558 (1993)]

Under the Fourth Amendment, the Government may not use evidence obtained during an unreasonable search and seizure to convict a person of crime. *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081 (1961); *Davis v. Mississippi*, 394 U.S. 721, 22 L.Ed.2d 676 (1969). Such evidence must be suppressed. N.C. Gen. Stat. § 15A-974 (1988). Thus, the incriminating evidence seized by Agent Kennedy as a result of the unreasonable seizure should have been suppressed.

For the foregoing reasons we hold that the trial court erred in denying the defendant's motion to suppress and admitting the physical evidence seized and his inculpatory statements made prior to the seizure of the scales and drugs. This being the only evidence presented by the State in support of defendant's indictment, we hereby order that defendant's conviction be vacated.

Whereas defendant's first assignment of error is dispositive of this appeal, we decline to address the constitutionality of the subsequent search of his person and automobile for drugs, as well as his remaining assignments of error.

Judgment vacated. New trial.

Judge WELLS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I agree with the majority that the officer's actions constitute a seizure, and that the trial court's findings of fact are insufficient to support the trial court's conclusion that the officer possessed a reasonable suspicion of criminal activity when he approached defendant, and that the intrusion was therefore invalid and a violation of defendant's Fourth Amendment right against unreasonable search and seizure. I do not agree, however, that this necessarily compels the suppression of the drugs, scales, and defendant's statements made prior to the seizure of these items.

The United States Supreme Court has consistently held that not all evidence is " 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455 (1963); *Brown v. Illinois*, 422 U.S. 590, 599, 45 L. Ed. 2d 416, 424 (1975); *see generally* 3 Wayne R. LaFave,

*Search and Seizure* § 8.2(d) (2d ed. 1987). Likewise, our North Carolina Supreme Court has consistently held that not "every statement made by a person in custody as a result of an illegal arrest is . . . *ipso facto* involuntary and inadmissible." *State v. Moore,* 275 N.C. 141, 153, 166 S.E.2d 53, 62 (1969); *see also State v. Freeman,* 307 N.C. 357, 364, 298 S.E.2d 331, 335 (1983). The question is whether the confession or the consent to search was voluntarily given, and if so, whether the "unconstitutional police conduct and the defendant's confession [or consent to search] was nevertheless sufficiently attenuated to permit the use of the confession [or evidence obtained as a result of the consensual search] at trial." *Freeman,* 307 N.C. at 364, 298 S.E.2d at 335. The determination of the "causal connection" between the illegality and the evidence obtained requires a consideration of the circumstances surrounding the arrest. *Moore,* 275 N.C. at 153, 166 S.E.2d at 61. Such circumstances, in the context of a consent to search, include the proximity of defendant's consent to the illegal police conduct, *see United States v. Recalde,* 761 F.2d 1448 (10th Cir. 1985); whether the illegal police conduct led officers to observe the particular object to which the consent to search was later given, *see Commonwealth v. Boyer,* 314 A.2d 317 (Pa. 1974); whether the illegal police conduct was flagrant, *see United States v. Sanchez-Jaramillo,* 637 F.2d 1094 (7th Cir. 1980), *cert. denied,* 449 U.S. 862, 66 L. Ed. 2d 79 (1980); whether the consent was volunteered by defendant rather than requested by officers, *see State v. Kennedy,* 624 P.2d 99 (Or. 1981); and whether the underlying purpose of the illegal police activity was to obtain the evidence in question, *see Florida v. Royer,* 460 U.S. 491, 75 L. Ed. 2d 229 (1983).

Because the trial court determined that the detention was not unlawful, it did not address the question of whether the consent to search and defendant's statements were poisoned by the detention. Because we now hold that the detention was unlawful, and because the other assignments of error do not require reversal, I would remand this case to the trial court for a determination of (1) whether the consent to search and the statements made by defendant were voluntarily given; and if so, (2) whether the evidence was obtained by exploitation of the initial illegal police conduct or was sufficiently attenuated to escape the taint. In the event the trial court determines on remand that the consent to search and statements were involuntarily given, or that the consent and statements were obtained by exploitation of the police miscon-

duct, the denial of the motion to suppress must be reversed. In the event the trial court determines on remand that the consent to search and statements were voluntarily given, and were not obtained by exploitation of the police misconduct, the order denying the motion to suppress must be affirmed.