STATE OF NORTH CAROLINA v. ROBERT EARL BROOKS

No. 356PA93

(Filed 29 July 1994)

1. **Searches and Seizures § 80 (NCI4th)— crack cocaine— initial approach by SBI agent—no reasonable suspicion required**

     An SBI agent's initial encounter with a defendant who was eventually indicted on cocaine charges did not violate the defendant's Fourth Amendment right against unreasonable searches and seizures where the evidence before the trial court tended to show that the agent approached the defendant's vehicle and offered a greeting; the initial contact with the defendant occurred as the defendant was sitting in the driver's seat of his car with the driver's side door open; as the agent approached, a man who had been standing near the car and talking with the defendant walked away; there was no evidence tending to show either that the agent made a physical application of force or that the defendant submitted to any show of force; and there was no indication from the evidence that a reasonable person in the position of the defendant would have believed that he or she was not free to leave or otherwise terminate the encounter. This conduct by the agent did not amount to an investigatory "stop" and certainly was not a "seizure"; as a result, no reasonable suspicion was required for the agent's initial approach and questioning of the defendant. No one is protected by the Constitution against the mere approach of police officers in a public place.

     **Am Jur 2d, Searches and Seizures §§ 51, 78.**

     **Law enforcement officer's authority, under Federal Constitution's Fourth Amendment, to stop and briefly detain, and to conduct limited protective search of or "frisk," for investigative purposes, person suspected of criminal activity—Supreme Court cases. 104 L. Ed. 2d 1046.**

2. **Searches and Seizures § 82 (NCI4th)— cocaine—empty holster on car seat—questioning by officer—no Miranda warnings**

     An SBI agent was not required to give a defendant eventually indicted on cocaine charges Miranda warnings before asking the

location of a gun where the agent did not "stop" the defendant, but merely walked up to the defendant, who was sitting in his vehicle, shined a light into the interior, and, upon seeing the empty holster on the seat beside the defendant, acted quite reasonably and properly in asking the defendant about the location of defendant's gun. Nothing in the evidence tended to show that the agent asked this question in a threatening manner or made any show of force which would have caused a reasonable person to believe that he or she was not free to go or otherwise terminate the encounter; in any event, questions asked by law enforcement officers to secure their own safety or the safety of the public and limited to information necessary for that purpose are excepted from the *Miranda* rule.

**Am Jur 2d, Searches and Seizures §§ 51, 78.**

**Law enforcement officer's authority, under Federal Constitution's Fourth Amendment, to stop and briefly detain, and to conduct limited protective search of or "frisk," for investigative purposes, person suspected of criminal activity—Supreme Court cases. 104 L. Ed. 2d 1046.**

3.  **Searches and Seizures § 49 (NCI4th)— cocaine—automobile—concealed weapon discovered—warrantless search**

    All of the physical evidence discovered during a search of defendant's car was admissible against defendant in a cocaine prosecution where an SBI agent approached the defendant's car and looked into the interior, using his flashlight; upon viewing an empty holster next to the defendant, the agent asked the defendant where his gun was; and defendant told the agent that he was sitting on the gun. The agent then had probable cause to arrest the defendant for carrying a concealed weapon and, having the requisite probable cause to arrest the defendant, was fully justified in searching the entire interior of the defendant's car during a search incident to that arrest. A search may be made before an actual arrest and still be justified as a search incident to arrest, if, as here, the arrest is made contemporaneously with the search.

**Am Jur 2d, Searches and Seizures §§ 174-179.**

**Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.**

STATE v. BROOKS

[337 N.C. 132 (1994)]

**Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.**

**Validity, under Federal Constitution, of warrantless search of motor vehicle—Supreme Court cases. 89 L. Ed. 2d 939.**

4. **Criminal Law § 584 (NCI4th)— cocaine—evidence suppressed in federal court—not required to be suppressed in state court**

The trial court did not err in a cocaine prosecution by denying defendant's motion to suppress physical evidence on the ground that the same evidence had been suppressed in an earlier case against him in federal court where defendant moved to suppress the evidence pursuant to N.C.G.S. § 15A-954(a)(7), the Constitution of the United States and the Constitution of North Carolina. The State of North Carolina was not a party to the federal criminal proceeding, nor was any showing made that the State was in privity with the federal government in prosecuting the defendant on the federal drug charges. Identity of parties is required by the statute and collateral estoppel does not apply under either the federal constitution or the state constitution to criminal cases in which separate sovereigns are involved in separate proceedings and there is no privity between the two sovereigns in the first proceeding.

**Am Jur 2d, Criminal Law §§ 321 et seq.**

5. **Appeal and Error § 451 (NCI4th)— perjury—appeal from Court of Appeals to Supreme Court—issue not raised in Court of Appeals—not properly before Supreme Court**

The issue of whether there was sufficient evidence to accept a plea of no contest to a perjury charge was not properly before the Supreme Court where it was not presented as an assignment of error in the Court of Appeals. Review by the Supreme Court after a determination by the Court of Appeals, whether by appeal of right or discretionary review, is to determine whether there is any error of law in the decision of the Court of Appeals and only that decision is before the Supreme Court for review.

**Am Jur 2d, Appeal and Error §§ 702 et seq.**

**STATE v. BROOKS**

[337 N.C. 132 (1994)]

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 111 N.C. App. 558, 432 S.E.2d 900 (1993), vacating a judgment entered by Britt, J., on 7 January 1992 in Superior Court, Duplin County. Heard in the Supreme Court on 14 April 1994.

> *Michael F. Easley, Attorney General, by James Peeler Smith, Special Deputy Attorney General, and Neil Dalton, Assistant Attorney General, for the State-appellant.*

> *Nora Henry Hargrove for the defendant-appellee.*

MITCHELL, Justice.

The defendant, Robert Earl Brooks, was initially indicted by a federal grand jury on 11 December 1990 for possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). The defendant filed a motion to suppress evidence. Following a hearing on the motion, the Honorable James C. Fox, United States District Court Judge for the Eastern District of North Carolina, concluded that the defendant had been unlawfully arrested and detained and that both he and his vehicle were searched without probable cause. Judge Fox further concluded that the "fruits" of the search, as well as any incriminating statements that the defendant had made, should be suppressed. Accordingly, Judge Fox granted the defendant's motion to suppress. The charges against the defendant in the United States District Court subsequently were dismissed voluntarily by the United States Attorney's office.

On 1 April 1991, the defendant was indicted by the Grand Jury of Duplin County for possession with intent to manufacture, sell, and deliver cocaine; trafficking cocaine; maintaining a dwelling/motor vehicle to keep drugs; and a misdemeanor charge of carrying a concealed weapon. Prior to trial, the defendant moved to suppress physical evidence and his statements to the police upon which the indictments were founded. At a pretrial motions hearing on 3 September 1991 in the Superior Court, Duplin County, Judge Henry L. Stevens denied in part and granted in part the defendant's motion to suppress. On 28 October 1991, the defendant was indicted for the additional felony of perjury. The defendant's subsequent motion to quash and motion to suppress evidence on grounds of collateral estoppel by reason of the order suppressing evidence in the prior federal case were

STATE v. BROOKS

[337 N.C. 132 (1994)]

denied by Judge Joe Freeman Britt at the 6 January 1992 Criminal Session of Superior Court, Duplin County.

Reserving his right to appeal the denial of his pretrial motions, the defendant tendered pleas of no contest to the charges of possession, trafficking, carrying a concealed weapon, and perjury. The felonies were consolidated for judgment, and the defendant was sentenced to seven years imprisonment. Judgment also was entered sentencing the defendant to a six-month concurrent sentence for the misdemeanor of carrying a concealed weapon. The defendant appealed only from the judgment sentencing him for the felony charges. The Court of Appeals, with one judge dissenting, vacated that judgment of the trial court and granted the defendant a new trial on the felony charges. *State v. Brooks*, 111 N.C. App. 558, 432 S.E.2d 900 (1993). The State did not appeal on the basis of the dissent. Rather, the State filed a petition for discretionary review on 16 September 1993, seeking to present additional issues for this Court's review. In his response to the State's petition, the defendant presented two additional issues which he contends were raised below but not addressed by the Court of Appeals. The State's petition was allowed by this Court on 4 November 1993. *State v. Brooks*, 335 N.C. 178, 438 S.E.2d 203 (1993).

The defendant's initial motion to suppress in this case was heard on 3 September 1991, in Superior Court, Duplin County. At the hearing, the State and the defendant presented evidence. From substantial evidence presented, Judge Stevens made findings of fact which included the following:

1. That on July 27, 1991, SBI Agent Bruce Kennedy accompanied members of the Duplin County Sheriff's Department to a place called Hezekiah Carter's Nightclub, located outside of the city limits of Magnolia, Duplin County, to execute a search warrant for the purposes of locating illegal controlled substances.

2. That Kennedy wore a marked "raid" jacket with a badge on the front, and "POLICE" written in big letters across the back. Moreover, Kennedy was wearing a baseball cap with the letters SBI across the top of the cap. That three law enforcement vehicles arrived at the same time and that one or more of the vehicles were marked police cars.

3. That upon arriving at the location to be searched, Kennedy observed a green Volkswagen car backed in the parking lot with

a man in it sitting on the driver's seat. Also Kennedy saw another black male standing in front of the car. The time was approximately 9:40 p.m.

4. Kennedy exited the vehicle [in which] he was riding and walked down across the ditch and over to the driver's side of the vehicle in question, where the defendant was sitting in the driver's seat. The other black male that had been standing next to the vehicle walked away before Kennedy was able to arrive at the car.

5. Kennedy shined his flashlight on the defendant in the car. Kennedy observed on the passenger side of the bucket seats of the Volkswagen an empty unsnapped holster within reach of the defendant who was sitting in the driver's seat.

6. Kennedy asked the defendant, "Where is your gun?" The defendant replied, "I'm sitting on it." Kennedy was still unable to see the gun although he shined his light all about the vehicle.

7. Kennedy then requested the defendant to "ease it out real slow." The defendant reached under his right thigh and handed the officer his gun by the grips. Kennedy took the gun from the defendant and put it on top of the defendant's car and then received the holster from the defendant. The defendant told Kennedy, "Be careful, it's got a round in the chamber; it's loaded and there is a round in the chamber." At the very moment Kennedy asked the defendant to hand out his gun, Kennedy put his hand on his gun, but just for a second. After retrieving the gun from the defendant, Kennedy did not stand holding his gun or towering over him.

8. The defendant then volunteered that he had got the permit for the gun from the Sheriff of Lenoir County, Billy Smith.

9. The defendant then asked Kennedy if he needed to see some identification. Kennedy replied, "Yes sir," at which time, the defendant handed his North Carolina Driver's License to Kennedy along with the registration for the said Volkswagen. The defendant was permitted to exit his vehicle on several occasions including getting outside the vehicle and assisting Officer Jones to open the hood of said vehicle.

10. Kennedy did not place the defendant under arrest for carrying a concealed weapon; instead he asked the defendant, "Robert Earl, do you have any dope in this car?" The defendant replied,

"No, do you want to look?" The defendant further stated that the officer could look if he wanted to.

11. The defendant then proceeded to search his own car. The defendant showed Kennedy where there was a compartment in the back seat of the vehicle where the defendant had built some speakers in the car and he showed the officer how the front part would lay down. There was nothing found in the compartment.

12. The defendant then laid a board down at which time Kennedy noticed that there were two nylon bags in the back foot of said vehicle directly behind the driver's seat.

13. The defendant took the board and laid it on top of the two bags in which Kennedy asked the defendant if he could look at the two bags and the defendant reached in and retrieved the two bags and sat them on the ground beside the Volkswagen . . . . The defendant unzipped the bag and inside of it was a digital scale that is commonly used for weighing small weights such as grams and ounces, which is consistent with what people measure narcotics with.

14. At that point, Kennedy took the second bag that was a small nylon pouch that normally attaches around a person's belt. Upon opening the pouch, Kennedy retrieved a white powdery substance and said, "Robert Earl, is this your dope?" The defendant replied, "Yes." Then Kennedy reached in the pouch and retrieved another white powdery substance that was bigger than the first. Kennedy asked the defendant "Is this what you use to cut it with?" The defendant stated, "Yes." Kennedy asked, "how much do you reckon you have got here?" The defendant replied, "About an ounce."

15. At that point, Kennedy informed the defendant that he was going to have to charge him with having drugs and the gun [to] which the defendant replied that he understood. Prior to this statement, [neither] Kennedy nor any other law enforcement officer had made any statement to the defendant restricting his movement.

16. During this whole time, the defendant was cooperating with the officer, he had not formally been placed under arrest and he did not have handcuffs on him.

Based upon the foregoing findings of fact, and others, Judge Stevens rendered the following conclusions and orders:

**STATE v. BROOKS**

[337 N.C. 132 (1994)]

1. That Kennedy had a reasonable suspicion of criminal activity that justified his action in order to confirm or to dispel his suspicion when he exited his patrol car and walked over to the defendant's vehicle to investigate. That Kennedy was authorized to shine his flashlight into the defendant's vehicle for his own protection and to conduct an initial inquiry.

2. That the defendant was not under arrest or in custody when Kennedy asked the defendant where the gun was.

3. That Kennedy had probable cause to arrest the defendant for carrying a concealed weapon when the defendant retrieved the pistol from under his leg and handed it to the officer. That the two bags containing the scales and alleged controlled substance obtained from the defendant's vehicle on the floor behind the driver's seat was pursuant to a search incident to an arrest and was made contemporaneously after the officer had probable cause to arrest the defendant for carrying a concealed weapon.

4. That the formal arrest of the defendant followed quickly after the search of the defendant's vehicle and the initial seizure of the concealed weapon from the defendant.

5. That Bruce Kennedy was acting in good faith in searching the compartments of the defendant's vehicle incident to the arrest.

6. That after Kennedy retrieved the gun and drugs from the defendant, that an "innocent" reasonable man in the defendant's circumstances would have understood his situation and believed that he was in custody or otherwise deprived of his freedom to leave.

7. That considering the totality of the circumstances, Miranda warnings should have been given prior to any questioning of the defendant concerning the scales or the alleged drugs located in said vehicle.

8. That because the required Miranda warnings were not given to the defendant prior to questioning about the scales or the alleged drugs, the incriminating oral statements made by defendant are inadmissible.

9. That none of the constitutional rights of the defendant, either State or Federal, were violated by reason of any search and seizure by law enforcement in this case.

THEREFORE, IT IS ORDERED that the defendant's Motion to Suppress the search and seizure of drugs and his person be and the same is hereby, DENIED AND DISMISSED. IT IS ORDERED that the defendant's Motion to Suppress statements made by the defendant after the search and seizure of scales and said drugs is hereby allowed.

IT IS HEREBY ORDERED, that the evidence seized from the defendant's person and automobile and all statements prior to the seizure of the scales and drugs shall be admissible. FURTHER, IT IS HEREBY ORDERED, that the incriminating statements made by the defendant subsequent to the discovery and seizure of scales and drugs shall be inadmissible.

The Court of Appeals concluded that the physical evidence also should have been suppressed. The Court of Appeals held that the trial court's failure to exclude this evidence was prejudicial error requiring a new trial. We allowed the State's petition for discretionary review.

[1] The sole question presented by the State, as appellant in this case, is whether reasonable suspicion or probable cause was needed to support SBI Agent Kennedy's initial approach and questioning of the defendant which led to the discovery of the evidence in this case. The trial court concluded that Kennedy had reasonable suspicion to approach the defendant. The Court of Appeals reversed, holding that the findings of fact were insufficient to support this conclusion by the trial court. Concluding that no reasonable suspicion or probable cause was required for Kennedy to lawfully approach the defendant's car, we now reverse the decision of the Court of Appeals.

The State argues: (1) that the officer did not need reasonable suspicion to approach the defendant's car; (2) that upon seeing the empty holster, the officer was not required to give *Miranda* warnings prior to asking the defendant, "Where is your gun?"; (3) that upon being told by the defendant that the weapon was under the defendant's thigh, the officer had probable cause to arrest him; (4) that the search of the defendant's car was a search incident to that lawful arrest; and (5) that in the alternative, the search of the car of the defendant was with his consent. We find the State's arguments persuasive.

The trial court's findings of fact following a suppression hearing concerning the search of the defendant's vehicle are conclusive and binding on the appellate courts when supported by competent evi-

dence. *State v. Mahaley,* 332 N.C. 583, 423 S.E.2d 58 (1992). However, this Court must determine whether those findings of fact in turn support the trial court's conclusions of law. We often have stated that such conclusions of law are binding upon us on appeal if they are supported by the trial court's findings. *E.g., State v. Wynne,* 329 N.C. 507, 406 S.E.2d 812 (1991); *State v. McKoy,* 323 N.C. 1, 372 S.E.2d 12 (1988), *vacated on other grounds,* 494 U.S. 433, 108 L. Ed. 2d 369 (1990); *State v. Williams,* 308 N.C. 47, 301 S.E.2d 335, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 177 (1983). In this context, the phrase "supported by the findings" means required as a matter of law by the findings or correct as a matter of law in light of the findings. *Mahaley,* 332 N.C. at 592-93, 423 S.E.2d at 64. Only conclusions of law which are "supported" in such a manner by the findings are binding on appeal. *Id.* Therefore, a better and clearer statement of the correct rule is that "[s]uch conclusions are fully reviewable on appeal." *Id.*

Having thoroughly reviewed the evidence introduced at the *voir dire* hearing and the trial court's findings, we conclude that the trial court's findings of fact are supported by substantial competent evidence. Furthermore, even assuming *arguendo* that the findings of fact are insufficient to support the trial court's conclusions of law relating to the issue of reasonable suspicion, the defendant is nonetheless entitled to no relief.

The defendant argues, as the Court of Appeals concluded, that the evidence and the trial court's findings fail to support the trial court's first conclusion of law that the officer had reasonable suspicion, based on objective and articulable facts, to approach the defendant's car. Because the approach to the defendant's car by Agent Kennedy did not require reasonable suspicion, we need not decide this issue.

"No one is protected by the Constitution against the mere approach of police officers in a public place." *State v. Streeter,* 283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973). Thus, "communication between the police and citizens involving no coercion or detention . . . [falls] outside the compass of the Fourth Amendment." *State v. Sugg,* 61 N.C. App. 106, 108, 300 S.E.2d 248, 250, *disc. rev. denied,* 308 N.C. 390, 302 S.E.2d 257 (1983). Kennedy's approach to the defendant's vehicle was not a "stop" for investigative purposes as defined by the Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889 (1968), and the Court of Appeals erred in characterizing it as such.

**STATE v. BROOKS**

[337 N.C. 132 (1994)]

The Supreme Court of the United States recently reaffirmed that police officers may approach individuals in public to ask them questions and even request consent to search their belongings, so long as a reasonable person would understand that he or she could refuse to cooperate. *Florida v. Bostic*, 501 U.S. 429, ——, 115 L. Ed. 2d 389, 396 (1991); *INS v. Delgado*, 466 U.S. 210, 80 L. Ed. 2d 247 (1984). "A seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostic*, 501 U.S. at ——, 115 L. Ed. 2d at 398. *See also California v. Hodari D.*, 499 U.S. 621, 626, 113 L. Ed. 2d 690, 697 (1991) (chase of defendant by armed officers who ordered him to halt not a seizure where the defendant did not yield). Such encounters are considered consensual and no reasonable suspicion is necessary. *Bostic*, 501 U.S. at——, 115 L. Ed. 2d at 398. The test for determining whether a seizure has occurred is whether under the totality of the circumstances a reasonable person would feel that he was not free to decline the officers' request or otherwise terminate the encounter. *Id.* at——, 115 L. Ed. 2d at 398-99; *Michigan v. Chesternut*, 486 U.S. 567, 573, 100 L. Ed. 2d 565, 572 (1988); *United States v. Mendenall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509 (1980); *State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 580-81 (1982).

In this case, the evidence before the trial court tended to show that Kennedy approached the defendant's vehicle and offered a greeting. The initial contact with the defendant occurred as the defendant was sitting in the driver's seat of his car with the driver's side door open. The evidence further tended to show that as the officer approached, a man who had been standing near the car and talking with the defendant walked away. There was no evidence tending to show either that Kennedy made a physical application of force or that the defendant submitted to any show of force. Further, there was no indication from the evidence that a reasonable person in the position of the defendant would have believed that he or she was not free to leave or otherwise terminate the encounter. This conduct by Kennedy did not amount to an investigatory "stop" and certainly was not a "seizure." *See Bostic*, 501 U.S. 429, 115 L. Ed. 2d 389. As a result, no reasonable suspicion was required for Agent Kennedy's initial approach and questioning of the defendant.

For the foregoing reasons, we hold that Kennedy's initial encounter with the defendant did not violate the defendant's Fourth Amendment right against unreasonable searches and seizures. We now address the effect this holding has on the admissibility of the physical evidence obtained.

**[2]** The defendant contends that once Kennedy saw the empty holster, rather than asking about the location of the weapon, Kennedy should have advised him of his rights by giving him the *Miranda* warnings prior to any further questioning. The defendant argues that, as a result of Agent Kennedy's failure to give him the *Miranda* warnings at that time, he was entitled to have all evidence resulting from his encounter with Kennedy suppressed. We disagree.

The rule of *Miranda* requiring that suspects be informed of their constitutional rights before being questioned by the police only applies to custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966); *State v. Clay,* 297 N.C. 555, 559, 256 S.E.2d 176, 180 (1979); *State v. Sykes,* 285 N.C. 202, 205, 203 S.E.2d 849, 851 (1974). Ordinarily, when a suspect is not in custody at the time he is questioned, any admissions or confessions made by him are admissible so long as they are made knowingly and voluntarily. *See generally Davis,* 305 N.C. 400, 290 S.E.2d 574. A careful examination of the circumstances surrounding Kennedy's approach to the defendant's vehicle reveals that Kennedy was justified in making the approach and in questioning the defendant without advising the defendant of his constitutional rights.

As the facts found by the trial court indicate, at the time of Kennedy's question concerning the location of the defendant's gun, Kennedy had not done anything to restrict the defendant's movement in any manner. Kennedy did not "stop" the defendant; he merely walked up to the defendant who was sitting in his vehicle and shined a light into the interior. At that point, Kennedy had made no show of force or done anything else to indicate to a reasonable person in the defendant's position that he was not free to leave or otherwise terminate the encounter. Therefore, the defendant had not been "seized" or "stopped" for Fourth Amendment purposes at that point. *Bostic,* 501 U.S. at ——, 115 L. Ed. 2d at 398.

Upon seeing the empty holster on the seat beside the defendant, Agent Kennedy acted quite reasonably and properly in asking the defendant about the location of the defendant's gun. Again, nothing in the evidence before the trial court tended to show that Kennedy asked this question in a threatening manner or made any show of force which would have caused a reasonable person to believe that he or she was not free to go or otherwise terminate the encounter. Nor did any evidence before the trial court indicate that the defendant's answer that he was sitting on the gun was other than voluntary.

Therefore, the defendant had not been "seized" or "stopped" at that point, and *Miranda* warnings were not required.

In any event, questions asked by law enforcement officers to secure their own safety or the safety of the public and limited to information necessary for that purpose are excepted from the *Miranda* rule. *See New York v. Quarles*, 467 U.S. 649, 81 L. Ed. 2d 550 (1984) (police officer asked an allegedly armed rape suspect where his gun was, and the suspect's incriminating response was found admissible). The subjective motive of the officer does not affect the exception. *Id.* There was no reason for Kennedy to refrain from asking the defendant about the location of his weapon without giving the defendant the *Miranda* warnings. Police officers do not need to delay an investigation and give such warnings when their own lives or the lives of others may be in danger. *State v. Holsclaw*, 42 N.C. App. 696, 257 S.E.2d 650, *disc. rev. denied*, 298 N.C. 571, 261 S.E.2d 126 (1979). Because Kennedy's question as to the location of the gun was limited to and necessary to Kennedy's and the public's safety, it was excepted from the *Miranda* rule.

[3] The defendant also contends that the evidence before the trial court was insufficient to support the trial court's findings and conclusion that the search of the defendant's person and vehicle was incident to a lawful arrest. The defendant argues that, for this reason, the trial court was required to suppress the physical evidence obtained by that search of his person and vehicle. We disagree.

Officers who lawfully approach a car and look inside with a flashlight do not conduct a "search" within the meaning of the Fourth Amendment. *See Texas v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502 (1983); *State v. Whitley*, 33 N.C. App. 753, 236 S.E.2d 720 (1977). If, as a result, the officers see some evidence of a crime, this may establish probable cause to arrest the occupants. If officers have probable cause to arrest the occupants, they may search—incident to that arrest—the entire interior of the vehicle, including the glove compartment, the console, or any other compartment, whether locked or unlocked, and all containers found within the interior. *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, *reh'g denied*, 453 U.S. 454, 69 L. Ed. 2d 1036 (1981); *State v. Andrews*, 306 N.C. 144, 147, 291 S.E.2d 581, 583, *cert. denied*, 459 U.S. 946, 74 L. Ed. 2d 205 (1982). The officers automatically have the right to make a search incident to arrest; they do not need to consider the particular defendant's dangerousness or the likelihood that the defendant may destroy evidence before

they conduct their search. *United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 38 L. Ed. 2d 456 (1973). Further, a search may be made before an actual arrest and still be justified as a search incident to arrest, if, as here, the arrest is made contemporaneously with the search. *Rawlings v. Kentucky*, 448 U.S. 98, 65 L. Ed. 2d 633 (1980); *United States v. Chadwick*, 433 U.S. 1, 53 L. Ed. 2d 538 (1977); *State v. Mills*, 104 N.C. App. 724, 411 S.E.2d 193 (1991).

In this case, the evidence supported the trial court's findings that Kennedy approached the defendant's car and, using his flashlight, looked into the interior. Upon viewing the empty holster next to the defendant, Kennedy asked the defendant where his gun was and was told by the defendant that the defendant was sitting on the gun. Kennedy then had probable cause to arrest the defendant for carrying a concealed weapon. *See* N.C.G.S. § 14-269 (1993) (defining the misdemeanor of carrying a concealed weapon). In contrast to the rule for searches, police generally need not obtain a warrant before arresting a person in a public place. *United States v. Watson*, 423 U.S. 411, 46 L. Ed. 2d 598, *reh'g denied*, 424 U.S. 979, 47 L. Ed. 2d 598 (1976). It is a well-established principle that an officer may make a warrantless arrest for a misdemeanor committed in his or her presence. N.C.G.S. § 15A-401(b)(1) (1988); *State v. McAfee*, 107 N.C. 812, 12 S.E.2d 435 (1890).

Having the requisite probable cause to arrest the defendant, Kennedy was fully justified in searching the entire interior of the defendant's car during a search incident to that arrest. Therefore, all physical evidence discovered during that search was admissible against the defendant.

In the present case, all of the trial court's findings were supported by substantial evidence presented at the suppression hearing. As we have demonstrated, those findings compel the conclusion that Agent Kennedy lawfully approached the defendant initially and, as the result of proper and lawful questions, obtained probable cause to arrest the defendant for carrying a concealed weapon in Kennedy's presence. The search of the defendant's person and vehicle pursuant to that lawful arrest was itself lawful in every respect. Therefore, we conclude that the trial court was correct in denying the defendant's motion to suppress the physical evidence seized during that search on the ground that it had been seized in violation of his Fourth

Amendment rights. The State is correct in its assertion that the Court of Appeals erred in holding to the contrary.

[4] The defendant has also attempted to present and argue assignments of error before this Court, which he contends were properly presented and preserved by him in the Court of Appeals. By one such assignment of error, the defendant contends that Judge Britt erred in denying his subsequent motion to suppress the physical evidence on the ground that the same evidence had been suppressed in an earlier case against him in federal court. He argues—based on the doctrine of collateral estoppel—that the State was barred from using the same physical evidence which had been suppressed in his federal case. The defendant's argument fails because the doctrine of collateral estoppel does not apply where, as here, separate sovereigns are involved in separate proceedings and there was no privity between the two sovereigns in the first proceeding.

The defendant moved to suppress the physical evidence in this case—pursuant to N.C.G.S. § 15A-954(a)(7), the Constitution of the United States and the Constitution of North Carolina—on the ground that the federal court's order collaterally estopped the State from using that evidence against him. None of those authorities entitle the defendant to suppression of the physical evidence.

The defendant's argument under the statute is meritless. With respect to criminal proceedings, identity of parties is required by the statute under which the defendant's motion was made. The statute provides in pertinent part that:

> The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that:
>
>> An issue of fact or law essential to a successful prosecution has been previously adjudicated in favor of the defendant in a prior action *between the parties*.

N.C.G.S. § 15A-954(a)(7) (1988) (emphasis added). The State of North Carolina was not a party to the federal criminal proceeding, nor was any showing made that the State was in privity with the federal government in prosecuting the defendant on the federal drug charges. Under the plain meaning of the statute, the State simply was not a party to the previous prosecution and the statute is inapplicable.

We turn next to the defendant's arguments under the federal and state constitutions. In *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469

(1970), the Supreme Court of the United States held that the doctrine of collateral estoppel was embodied in the Fifth Amendment's double jeopardy provision and applicable to the states through the Due Process Clause of the Fourteenth Amendment. The doctrine of collateral estoppel in criminal cases has also been recognized in North Carolina. *State v. Warren*, 313 N.C. 254, 328 S.E.2d 256 (1985); *State v. McKenzie*, 292 N.C. 170, 232 S.E.2d 424 (1977). " 'Collateral estoppel' means that once an issue of ultimate fact has been determined by a valid final judgment, that issue may not be relitigated by the same parties in a subsequent action." *Warren*, 313 N.C. at 264, 328 S.E.2d at 263; *see State v. Lewis*, 311 N.C. 727, 319 S.E.2d 145 (1984). Simply put, *res judicata* precludes litigation of the claim or cause of action, collateral estoppel precludes the litigation of previously litigated issues of fact or law. *Ashe*, 397 U.S. 436, 25 L. Ed. 2d 469. We conclude, however, that collateral estoppel does not apply, under either the federal constitution or the state constitution, to criminal cases in which separate sovereigns are involved in separate proceedings and there is no privity between the two sovereigns in the first proceeding.

Although this Court has recognized and applied the doctrine of collateral estoppel, we have held that there either must be an identity of parties or the party against whom the defense is asserted must have been in privity with a party in the prior proceedings in order for the doctrine to apply.

> Under a companion principle of *res judicata*, collateral estoppel by judgment, *parties and parties in privity with them*—even in unrelated causes of action—are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination. "[Collateral estoppel] is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally."

*King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (citations omitted) (emphasis added). The State of North Carolina was not a party to the federal criminal proceeding against this defendant and could not have been. Nothing in the record before us indicates that the State's prosecutors were involved with the federal prosecution. The State was not in a position to appeal the federal court's suppression order and could not have compelled the United States Attorney to do so. The State is not bound by a federal court ruling in a proceeding in which it had no opportunity or standing to be heard. *See United States v. Pforzheimer*, 826 F.2d 200 (2d Cir. 1987).

STATE v. BROOKS

[337 N.C. 132 (1994)]

The defendant contends that the State, by deferring to the federal prosecution, was somehow in privity with the federal government with respect to the federal charges. Deferring to the federal prosecution does not make the State a party to the federal proceeding, nor does it make the State in privity with the federal government. This is unlike the situation in *Montana v. United States*, 440 U.S. 147, 59 L. Ed. 2d 210 (1979), where the federal government exercised undisputed control over the state court civil litigation although the federal government was not a named party to the litigation. This case is more like *United States v. Sutherland*, 929 F.2d 765 (1st Cir. 1991), in which the court allowed federal prosecution, although evidence which was introduced by the government had been suppressed in state court on state constitutional grounds. The court observed:

> By contrast [with the events in *Montana v. United States*], in this case there is no evidence that the federal prosecutors played any role or had any direct influence in the state court suppression hearing. The federal government was not a party, nor in privity with a party, and collateral estoppel is therefore inapplicable.

*Sutherland*, 929 F.2d at 772.

Similarly, with respect to the present state court prosecution, there was no evidence that the state authorities assumed *de facto* control of the federal prosecution. It makes no difference that the state and federal authorities may have acted together in an investigation that led to the charges. Each sovereign may enforce its own laws. *See Heath v. Alabama*, 474 U.S. 82, 88 L. Ed. 2d 387 (1985). A person may be tried for the same conduct by both a state and the federal government. *United States v. Lanza*, 260 U.S. 377, 67 L. Ed. 314 (1922). In *Heath*, the Supreme Court stated that "the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' not from the Federal Government." *Heath*, 474 U.S. at 89, 88 L. Ed. 2d at 394.

The trial court concluded as a matter of law that the State was not a party to the federal prosecution, nor was the State in privity with a party connected to the federal prosecution. The trial court further concluded as a matter of law that collateral estoppel was therefore inapplicable and that the State was not precluded by that doctrine from using the evidence seized at the time of the defendant's arrest. The evidence fully supports the findings of fact which in turn support these conclusions of law by the trial court. We agree with the trial

court's conclusions and conclude that this assignment of error is without merit.

**[5]** The defendant also contends that there was insufficient evidence of perjury to support the acceptance of his plea of no contest to that charge. This issue is not properly before this Court. The defendant did not present this issue as an assignment of error before the Court of Appeals as required by Rule 28(a) of the North Carolina Rules of Appellate Procedure. After there has been a determination by the Court of Appeals, review by this Court, whether by appeal of right or discretionary review, is to determine whether there is any error of law in the decision of the Court of Appeals and only the decision of that court is before us for review. *State v. Colson*, 274 N.C. 295, 163 S.E.2d 376 (1968), *cert. denied*, 393 U.S. 1087, 21 L. Ed. 2d 780 (1969); *State v. Williams*, 274 N.C. 328, 163 S.E.2d 353 (1968); N.C. R. App. P. 16(a). A party who was an appellant before the Court of Appeals is only entitled to present for review by this Court assignments of error which he properly presented for review to the Court of Appeals. *Sales Co. v. Board of Transportation*, 292 N.C. 437, 443, 233 S.E.2d 569, 573 (1977). In this case, the defendant failed to assert this issue as an assignment of error in the Court of Appeals. Therefore, it is not properly before this Court and we do not address it here.

We conclude that the defendant received a fair trial free of prejudicial error. The decision of the Court of Appeals vacating the trial court's judgment and awarding the defendant a new trial is reversed, and this case is remanded to that court for further remand to the Superior Court, Duplin County, for reinstatement of the judgment entered there upon the defendant's pleas to the felony charges against him.

REVERSED AND REMANDED.